3-11-0742 In Re Marriage of Agnes A. Sorce of Holland, Wade v. Royce Sorce, et al., M.V. by Robert Rohde. I do represent Source Enterprises, Inc., the defendant, appellee, and cross-appellant in this case. With respect to Agnes Sorce's appeal, Agnes' brief lists one and only one issue for review. And her issue in her brief is, quote, whether the trial court abused its discretion in denying Agnes' motion to amend and conform the pleadings to the proof. That's the only issue she's asserted in her brief. But the trial court did more than just deny her motion to amend. It further awarded Agnes a constructive trust in the amount of $161,400. And it further stated in its order, the trial court stated, assuming arguendo that leave to amend to increase the prayer for relief fivefold were granted, the court would not award more than is ordered herein. So the trial court specifically stated, even if he granted the motion to amend, he would not have awarded Agnes any more money. Agnes has not challenged that finding in her appellate brief. And therefore, under Supreme Court Rule 341, she's waived that issue. So because Agnes has waived that issue and the court found the motion to amend didn't change or wouldn't change his ultimate ruling, the issue on the motion to amend becomes moot because it won't change the result. And I've cited several cases in my brief about how courts do not decide issues that are moot and that won't change the ultimate result in the case. And one of them, I think, is very close to this sort of situation. It's the case of Barth v. Reagan. In that case, the trial court barred an expert from testifying because the expert wasn't timely disclosed. The trial court stated under the rule at that time that the trial court didn't believe he had any discretion other than to bar the expert. But he went on to say, in addition, even if he did have discretion, he would still bar the expert. And in that Barth v. Reagan case, the Supreme Court said, well, we're not going to look at whether the trial court actually did or didn't have discretion. We're not going to look at that issue because the trial court – that issue is moot because the trial court further said, even if he had discretion, he's going to bar – he would still bar the witness. And we're in the same sort of situation here. The trial court explicitly stated whether it granted the motion to amend or not, it would not have awarded any more money to Agnes. Well, under those circumstances, let's just state for the sake of argument that the trial court abused its discretion in not allowing the motion to amend. By indicating how the court would rule in the event there were a remand in this case, would this court be justified to direct the matter to be assigned to another court, another judge, another trial judge, to ensure some neutral approach to the issue? If the trial court abused its discretion on the motion to amend, I don't think so because Agnes has an argument. And I don't think the court could abuse its discretion on either the motion to amend or in its ultimate finding. And I could address that ultimate finding issue. My question to you is, are we at liberty to direct another trial judge to consider the matter if the trial judge is reversed in this case? I haven't researched that issue, Your Honor. And she didn't raise that in her pleadings. I haven't seen that happen before. I wouldn't presume to tell this court what it could and couldn't do on an issue that I haven't researched. It happens on occasion when a reviewing court believes that the lower court, whether it be the Illinois Supreme Court, directs the appellate court to do something that doesn't get done. And it goes back to the Supreme Court on occasion. We get a directive that we either do it or find another panel to do it. So it has been done, and I just wanted your point of view on that. But you may move on. I'm chewing up something. Well, I don't think the trial court did abuse its discretion. I think the trial court did what it was instructed to do by the last appellate court order, which was to determine the amount of a constructive trust. The trial court did that. And there was a lot of – it was a big issue at the trial over what amount of bonus Roy would have been paid absent the fraud that this court found had occurred. And the trial judge at the original trial asked Agnes' attorney many times, how do I know the amount? What amount are you talking about? What amount do you think should have been awarded? And the court made a lot of factual findings that affect this amount. He held that Roy had no contract of employment, that he was at will, the bonuses were discretionary, he had no contractual right to a bonus. The trial court acknowledged there were substantial variations in Roy's pay both before and after this time period. And there was a lot of argument, lots of facts, lots of evidence on those issues that the court could rightly consider. And as this court knows, in determining whether the trial court abused its discretion, that's a very deferential standard of review. And the court really should ask, is there any basis in the record to support what the trial court did? And here, there was a lot of testimony at trial that these bonuses, the large bonuses that occurred over the four-year period from 1999 through 2003 were extraordinary occurrences. It was undisputed Roy was building a house during that time period. The house ultimately cost $1.4 million. The bonuses started, the large bonuses started with the beginning of the construction of the house, and they ended near the time that the house was completed. Agnes admitted at trial that Roy had told her the company would be paying for the new house. And it's undisputed that she also acknowledged most of the people that worked on the house were paid with company checks. Now, I'd just like to add, there was no hint of any tax improprieties here. The company did not deduct any of these amounts. All the amounts that the company paid for the construction of the house were deemed, were shown as income to Roy, and Roy paid taxes on them. But everyone understood, even Agnes, that the company was going to pay for the house, and that the house was being built, and that's when these big bonuses occurred. There was also testimony that before the construction on the house started, Roy's bonus in 1998 had been between $70,000 and $80,000. And so here, I think the trial court, there was a lot of evidence in the record. The trial court simply could have concluded that Roy's bonus would have gone back to what it was before the construction of the house started, between $70,000 and $80,000 for the two years in question, gets you right up to the $160,000 range that the trial court ultimately awarded. There was also testimony that during this time period, Roy's bonuses were less than Agnes, who owned the company and ran the company. That's just evidence that it was an extraordinary occurrence, these very large bonuses. So I think the trial judge was on very solid ground in finding that the $161,000 is a reasonable number. I think the trial judge also was able to conclude that Agnes' complaint, up until the second day of trial, was requesting $161,000. And as you know, a complaint is a judicial admission of sort. Now, this was in the prayer for relief, but I think the trial judge is fair in concluding that their request, Agnes' request for $161,000, is in the nature of an admission or evidence that even Agnes thought that amount was fair, at least up through the second day of trial. And I've got many more facts in the brief about what is in the record to support the trial judge's ultimate finding as not being an abuse of discretion. And like I say, with his finding that the motion to amend would not have changed that, Agnes hasn't even argued that the ultimate finding was an abuse of discretion. So I think she's waived of that issue. But I think even if it weren't waived, there's a lot of support in the record for the judge's ultimate decision. With respect to the motion to amend itself, the trial judge goes into a lot of detail in his order about the reasons he's denying the motion to amend. He finds that the motion to amend wasn't timely, that there were previous opportunities to amend, that Agnes had had all the information she needed in order to make this amendment. Really, since the time she had filed the original complaint, Agnes offered no excuse or even any reason at all as to her failure to amend before the second day of trial. And he also found that the amendment would have been prejudicial to Source Enterprises. And I think the prejudice is simply, you know, the case was always a case for $161,000 up until the time of trial. And obviously a party takes into account the amount of dispute in determining how many resources to submit in defending that claim. Source Enterprises only took a few short depositions. We didn't retain any expert witnesses. And I think, you know, because the case is for $161,000, if the case had been for over $800,000, a reasonable person could obviously spend over $200,000 defending that case or over $300,000 defending that case. The legal issues would have been the same. The legal issues are similar, yes. But its amount of, you know, like the expert witnesses. We didn't have an expert witness on, you know, Roy's value as an employee or what he would be paid by some other expert. You know, that's something that you would do if there was a whole lot of money in dispute. Experts become very expensive. Lawyers become very expensive. Depositions are expensive. And so, and like I say, this is just one factor I think the trial court was allowed to consider in addition to all of the other reasons. The untidiness of it, lack of any excuse or reason, her knowledge of all of this information from day one. And so, I do think that the trial court did not abuse its discretion in either denying the motion to amend or in ultimately finding $160,000 is an appropriate award in this case. And like I say, the $160,000 is simply in line with what Roy was receiving before the construction of the house started. And Roy also got money from other sources within the company. For example, in 2004, Roy received rental income. His income from the company on his tax return was in the neighborhood of $240,000, $250,000 without this bonus. With his salary, the rental income, there was a distribution of profit from the company that year. Roy received 20% of that, which I believe was in the range of $50,000. There was a lot of evidence for the court to use in determining this amount. And really, the trial court struggled with that. He asked specifically Agnes's lawyer, and I quote some of the exchanges in my brief or cite to them, where the trial judge was asking for direction. Well, how much bonus do you think he would have been paid? How do I know that? How do I determine that? And she didn't provide him with a lot of direction. All she really talked about was, well, these CDs were $807,000. I think that's another reason that he denied the motion to amend is because he didn't really feel the motion conformed to the evidence, that the pleading conformed the pleadings to the proof. And the reason that that is is because Agnes never really tied the CDs to Roy's bonus in any way. The CDs were there, but they didn't appear. The first CD was purchased in September of 2005, and Roy's first bonus that he didn't receive would have been in December of 2004. Agnes never traced that money to those CDs in any way. And I don't think the trial court ever felt there was any connection between the CDs and the bonus. And the court, in its first order in this case, the appellate court's first order, cites the Sadaka case, which is a tracing case and a constructive trust case. Thank you. And it tells a plaintiff, a constructive plaintiff, how to trace money. And basically, if there's a commingled account, there's a conclusive presumption that the trust funds stay in the account, and any money paid out is the defendant's own money. So they presume the trust funds stay in the account. Well, these CDs were purchased nine months later. Agnes never showed where this money that supposedly should have been paid to Roy was in that time period. And there were many CDs that were purchased. She never showed what the CDs were, the amounts of the CDs individually, when they were purchased, the money that was used to purchase the CDs, how they were redeemed, when they were redeemed, because they didn't exist at trial, the amount of the money, where the money went after it was redeemed. And so I think that went into the trial court's thinking in saying this amendment, which was simply the amount of the CDs, didn't conform to any relevant evidence at trial. So I think the trial court was well-justified in denying the motion to amend or ultimately awarding $160,000. Unless the court has questions, that's all I have to say. Thank you very much. Thank you. Thank you. And we will be reviewing the briefs carefully, conferencing the case, discussing it, and then preparing a written argument. Thank you. We'll stand and recess until the next case.